UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GRADY DION MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:14-CV-116-BG |
| ) | ECF |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Grady Dion Mason seeks judicial review of a decision of the Commissioner of Social Security denying his applications for supplemental security income and disability insurance benefits. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. Mason did not consent to the jurisdiction of the Magistrate Judge. In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

**I.      Statement of the Case**

On February 13, 2013, Mason and a vocational expert testified at a hearing before an administrative law judge (ALJ). Mason was represented by an attorney at the hearing. The ALJ determined on March 29, 2013, that Mason was not disabled because he could perform past relevant work in the national economy. The Appeals Council denied review on May 21, 2014. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see*

*also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

## II.     Factual Background

Mason claims that he became disabled on November 7, 2007, at the age of forty-two. (Tr. 17, 19.) Mason claims that he is unable to work due to diabetes mellitus, diabetic neuropathy, diabetic retinopathy, back and neck problems, as well as hypertension and depression. (Tr. 18, 39, 123, 167.) He attended some college classes, but did not complete college; he last worked as a sales and delivery worker; and he previously worked as a store cashier, automobile dent repair technician, forklift operator, and sprinkler fabricator. (Tr. 21, 36–38.) He lives with his mother who cooks and takes care of the household chores with help from a housekeeper; he does not drive; he does not manage his own finances; and he does not socialize. (Tr. 168–72.)

## III.    Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2015); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*,

402 U.S. 389, 390 (1971).

## IV. Discussion

In making a disability determination, the Commissioner conducts a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) whether the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520(a)(4) (2015). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). At the first four steps in the analysis, the claimant bears the burden of proof. *Id.*

In this case, the ALJ determined at steps one and two that Mason was not currently engaged in substantial gainful activity and that his diabetes, diabetic neuropathy, and diabetic retinopathy are severe impairments. (Tr. 18.) The ALJ concluded however, that Mason's hypertension was not a severe impairment because it was "well-managed with medication." (Tr. 18.) At step three, the ALJ concluded Mason was not presumptively disabled. She assessed Mason's residual functional capacity (RFC) and found that he had the RFC to perform light work, although he is limited to no more than four hours of standing and/or walking during an eight hour work day; no more than occasional climbing of ramps and stairs or stooping; no climbing of ladders, scaffolds, or ropes; and no more than frequent balancing, kneeling, crouching, or crawling. (Tr. 22.) At the hearing, the vocational expert testified that Mason would be able to perform his past relevant work as a sales

3

delivery driver, which is classified as light work. (Tr. 22, 56.) At step four of the sequential analysis, the ALJ found that Mason could return to past relevant work as a sales delivery driver or perform other light unskilled work such as a bench assembler, bench inspector, or machine tender, which exist in significant numbers in the national economy. (Tr. 23.)

Mason argues on appeal that the ALJ erred by (1) failing to consider material medical evidence; and (2) failing to properly evaluate his long-term complications from diabetes at step three of the sequential evaluation process. Pl.'s Br. 18, 22.

**A.      The ALJ considered all material medical evidence in the record.**

In Mason's first point of error, he argues that because the ALJ did not explicitly determine that his chronic back pain and depression were severe impairments at step two of the sequential evaluation process, the ALJ implicitly determined that such impairments were severe—severe impairments for which the ALJ failed to include limitations. Pl.'s Br. 19–20. He also argues that the ALJ failed to consider material medical evidence in making the RFC determination. *Id.* at 18.

**1.      Mason's back pain and depression are presumed to be severe impairments.**

Mason argues that because the ALJ did not explicitly find that his impairments of chronic back pain and depression are severe, the court should infer that such impairments are severe under *Stone v. Heckler*. *Id.* at 18. "[A]t step two of the five step analysis, the adjudicator must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Under *Stone*, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's

4

ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). Where "the ALJ proceeds past step two of the sequential evaluation process, it is *presumed* that the ALJ found that a severe impairment existed unless the ALJ states otherwise." *Lederman v. Astrue*, 829 F. Supp. 2d 531, 538–39 (N.D. Tex. 2011) (emphasis in original) (citing *Reyes v. Sullivan*, 915 F.2d 151, 154 n.1 (5th Cir. 1990)).

The ALJ discussed Mason's depression and concluded that "he had no restrictions in activities of daily living; mild difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration." (Tr. 18.) She also discussed his back pain at the third step of the sequential evaluation process, and she considered his limitations at the fourth and fifth steps of the sequential evaluation. (Tr. 20–22.) She did not explicitly find that such impairments were severe, however. But, because the ALJ proceeded past step two of the analysis, it is presumed that she found Mason's back pain and depression to be severe impairments. *See Reyes*, 915 F.2d at 154 & n.1. By proceeding past step two, any error the ALJ may have committed at step two was harmless. *See Herrera*, 406 F. App'x at 903 (holding that an "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand"); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). Remand is therefore not required on this point.

    **2.    The ALJ considered all of the material medical evidence.**

Mason also argues that the ALJ ignored evidence that he submitted post-hearing. Pl.'s Br. 20. The ALJ agreed to hold open the record for ten days after the hearing in order for

Mason to acquire certain records from Dr. Miles Day of the Texas Tech Pain Clinic. (Tr. 31.) Mason submitted the records on February 25, 2013, and they were marked as Exhibit 13F. (Tr. 27, 527–87.) He asserts that because the ALJ did not specifically discuss these records in her decision and did not include limitations in the RFC related to these records, remand is required. *Id.*

As the Commissioner points out, the fact that the ALJ did not discuss all of the testimony and evidence presented does not mean that she failed to consider all of the evidence. *See* Def.'s Br. 7. The ALJ is not required to provide a detailed account of all the evidence she considered in making her determination. *See Taylor v. Colvin*, No. 3:12–CV–2750–P, 2013 WL 5345840, at *8 (N.D. Tex. Sept. 24, 2013) (citing several cases) ("Certainly, courts in the Fifth Circuit have not required a verbatim recitation of all limitations on which the RFC is based."); *see also Hall v. Barnhart*, 31 F. App'x 839, at *1 (5th Cir. 2002) ("The ALJ is not required to recite every scrap of evidence which the claimant considers helpful to her case."). The ALJ explicitly stated that she made a "careful consideration of the entire record," and she highlighted many of the records in her decision. (Tr. 18–22, 24–27.)

What is more, the records from Dr. Day do not support Mason's claims that additional limitations should have been included in the RFC. Mason argues that the ALJ should have included limitations in his RFC for the use of his upper extremities, including his hands, back pain, and lower extremity weakness and swelling. (Tr. 21–22.) The records from Dr. Day span from June 2011 through December 2011 and include the results of a nerve conduction study (NCS) and a electromyography (EMG) test performed by Dr. Randall Wolcott. However, Dr. Day noted on separate occasions that Mason had normal range of motion, normal strength, normal gait, and normal deep tendon reflexes. (Tr. 533, 545, 576.) In December 2011, Dr. Day also noted that Mason was

"improving." (Tr. 533.) Dr. Day referred Mason to Dr. Wolcott based on his complaints of numbness and tingling in his extremities to "rule out neurologic involvement in the bilateral upper extremities." (Tr. 540, 546, 552–53.) Based on the NCS and EMG tests, Dr. Wolcott concluded that Mason's numbness and tingling in his hands and upper extremities were due to "a mild generalized sensory/motor peripheral neuropathy most consistent with his diabetes mellitus," but there was no evidence of neurologic involvement. (Tr. 541.)

Mason also argues that the ALJ should have included limitations in the RFC related to his back pain. The issue of whether a claimant's subjective complaints of pain amount to a disabling condition is within the discretion of the ALJ. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). In this case, the ALJ determined that Mason's testimony regarding "his level of pain and functional limitations was not credible" or supported by the evidence. (Tr. 22.) Mason stood during the hearing because he was unable to tolerate pressure from sitting. (Tr. 43.) Yet Mason also testified that he spent most of his time during a typical day lying down. (Tr. 44.) And while the records from Dr. Day indicate that Mason experienced some pain, he was responsive to pain management treatments—physical and aqua therapy, steroid shots, Celebrex for pain, and Neurontin for numbness—and Dr. Day did not indicate that Mason was limited in his functioning due to his pain. (Tr. 50, 247, 251–52, 257, 261, 268, 533, 545, 574.) Pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618–19 (5th Cir. 1990)); *see* 42 U.S.C. § 423(d)(5)(A) (stating that subjective complaints of pain must be corroborated with the objective medical evidence). The ALJ was not required to accept Mason's subjective complaints of back pain without reservation. *Hall*, 31 Fed. App'x at *1.

In sum, Mason has not shown how the evidence submitted post-hearing, labeled Exhibit 13F, "might have altered the result" of the ALJ's decision. *Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984). Based on the evidence, the ALJ did not err by excluding any alleged limitations related to Mason's upper extremity numbness and tingling, as well as his back pain, lower extremity weakness, swelling in his legs, and depression. What is more, the RFC would accommodate Mason's allegations of back pain. The RFC limits Mason's standing and walking as well as stooping and climbing. (Tr. 22.) The ALJ considered the entire record when making her determination, which is supported by substantial evidence; thus, remand is not required on this point.

> **B.  The ALJ properly evaluated any long-term complications from diabetes mellitus under § 9.00B(5) of the Adult Listings of Impairments.**

In Mason's second point of error, he argues that the ALJ erred by finding that he does not suffer from any diabetic-related impairments that would satisfy Listing § 9.00B(5). Pl.'s Br. 22–23. He contends that the ALJ did not follow Listing § 9.00B(5)(a)(ii) and Social Security Ruling (SSR) 14-2p, which provides guidelines for evaluating diabetes and the impairments that result from it. *Id.* at 23.

Mason had the burden of establishing that his impairment or combination of impairments is equivalent to a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Listing 9.00B(5)(a)(ii) provides the following:

> Chronic hyperglycemia, which is longstanding abnormally high levels of blood glucose, leads to long-term diabetic complications by disrupting nerve and blood vessel functioning. This disruption can have many different effects in other body systems.

*See* 20 C.F.R. Part 404, Subpart P, App. 1, § 9.00B(5)(a)(ii). The listing goes on to explain that the complications from diabetes should be evaluated under the appropriate related listing, including

8

diabetic retinopathy under Listing 2.00 and diabetic neuropathy under Listing 6.00. *Id.*

As Mason argues, he does have a history of hyperglycemia throughout his treatment records. (Tr. 330, 334, 336, 405, 416, 461, 500.) But Mason's medical records and his testimony at the hearing indicate that Mason does not follow a proper diabetic diet, has a history of medication non-compliance, and has failed to record his blood sugar levels or bring his glucose log to his medical appointments, as instructed by his doctor. (Tr. 46–47, 54–55, 450, 454, 458–63, 508, 513.) A medical condition that can be reasonably controlled with medication or treatment is not disabling unless the claimant establishes that he cannot afford medication and can find no other way to obtain it. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The ALJ found, and the record supports the conclusion, that Mason's diabetes could be controlled by complying with his physician's orders, including complying with medications, monitoring and recording his blood glucose levels, and following a diabetic diet. (Tr. 19, 493, 504.)

The records also indicate that Mason had taken Neurontin, a medication used to alleviate the symptoms of neuropathy, in the past. (Tr. 491, 502, 513.) Mason testified at the hearing that he was not currently taking Neurontin because he could not afford it. (Tr. 50.) However, Mason did not present additional evidence regarding his inability to afford medications nor does he argue in this appeal that he is unable to obtain Neurontin.

Moreover, "the ability to afford treatment is relevant only when the treatment in question would remedy an otherwise disabling impairment." *Charland v. Astrue*, Civ. Action No. 3:08–CV–1072–B, 2010 WL 624047, at *9 (N.D. Tex. Feb. 22, 2010). Here, the evidence does not

9

show that Mason's diabetic neuropathy caused severe and persistent impairments.[1] For example, Dr. Shaili Felton, who first began treating Mason's Diabetes in 2011, conducted multiple monofilament foot exams that revealed that Mason's sensation in his feet was intact. (Tr. 452, 461, 471, 493, 504, 515.) Similarly, the state agency medical consultant reviewed Mason's medical records but did not opine that Mason had any functional limitations due to his Diabetes or diabetic neuropathy. And although Mason has been diagnosed with neuropathy, he does not point to any objective medical records that indicates a worsening of his neuropathy. Nor does he point to any evidence of functional limitations or restrictions that were imposed by a treating physician due to his diagnosed neuropathy. "Diagnosis of a condition, by itself, is not evidence of a functional limitation." *De La Rosa v. Astrue*, No. EP–10–CV–351–RPM, 2012 WL 1078782, at *18 (W.D. Tex. March 30, 2012) (citing *Brock v. Astrue*, No. 3–10–CV–1399–BD, 2011 WL 4348305, at *3 (N.D. Tex. Sept. 16, 2011)). Therefore, even if the ALJ erred in assuming Mason could afford Neurontin, such error is harmless. *Charland*, 2010 WL 624047, at *9 (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

Mason also argues that the ALJ should have included limitations in his RFC due to diabetic retinopathy, poorly healing skin infections, gastroparesis, and cognitive impairments, depression, and anxiety. Pl.'s Br. 23. Mason was diagnosed, evaluated, and treated for diabetic retinopathy. (Tr. 277–302.) He received a series of laser treatments on his right eye to treat the retinopathy. (Tr.

---

[1]"Diabetic neuropathy is a peripheral nerve disorder caused by diabetes or poor blood sugar control. The most common types of diabetic neuropathy result in problems with sensation in the feet. It can develop slowly after many years of diabetes or may occur early in the disease. The symptoms are numbness, pain, or tingling in the feet or lower legs. The pain can be intense and require treatment to relieve the discomfort. The loss of sensation in the feet may also increase the possibility that foot injuries will go unnoticed and develop into ulcers or lesions that become infected. . . . The prognosis for diabetic neuropathy depends largely on how well the underlying condition of diabetes is handled. Treating diabetes may halt progression and improve symptoms of the neuropathy, but recovery is slow." *Diabetic Neuropathy*, Nat'l Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/diabetic/diabetic.htm (last updated Sept. 16, 2008).

284, 286–87.) At a four month follow-up appointment in May 2011, however, Dr. Douglas Kopp, who treated Mason, noted the following:

> Proliferative diabetic retinopathy in the past without active disease. Although there is a little bit of exudate inside the arcade on the left, there doesn't appear to be macular edema and this is confirmed with OCT today. . . . Importance of good blood sugar control stressed . . . .

(Tr. 278.) As of May 2011, therefore, Mason's diabetic retinopathy was not worsening and had, in fact, improved. As for Mason's assertion that he suffers from poorly healing skin infections and gastroparesis as a result of his Diabetes, there is little mention of such conditions in the medical records and no indication that such conditions required limitations in his RFC. Finally, as already discussed, the ALJ noted in her opinion that Mason's depression is well-managed with medication, and he has "no restrictions in activities of daily living; mild difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration." (Tr. 18.) In addition, Mason does not assert what limitations to his RFC, if any, are appropriate regarding his depression, as the Commissioner points out in her response. Def.'s Br. 5 n.2. Substantial evidence supports the ALJ's finding that Mason's depression does not require any limitations in his RFC.

In sum, Mason has not established a reversible error on this point.

**V.      Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Mason's Complaint with prejudice.

**VI.     Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 13, 2015.

NANCY M. KOENIG
United States Magistrate Judge